UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

--------------------------------------------------------------------x

PATRICIA GROCE,

                          **Plaintiff,**

        -against-

UNITED STATES,

                         **Defendant.**

**OPINION & ORDER**

07-CV-5239

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ ★ OCT 19 2011 ★
BROOKLYN OFFICE
BROOKLYN OFFICE

--------------------------------------------------------------------x

**GERSHON, United States District Judge:**

Plaintiff Patricia Groce brings this action under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671 *et seq.*, against the United States and the Transportation Security Administration ("TSA"), for injuries allegedly sustained as a result of defendants' negligence after she slipped and fell in Concourse A of Terminal Four at John F. Kennedy International Airport Terminal ("JFK/IAT") in Queens, New York.[1] The case was tried by the court, without a jury, pursuant to 28 U.S.C. § 2402. Under the FTCA, the court applies the law of the state where the "act or omission occurred"; the parties do not dispute that New York law applies.

**Negligence Standard Under New York Law**

To establish negligence under New York law, a plaintiff must show that: "(1) the defendant owed the plaintiff a cognizable duty of care; (2) the defendant breached that duty; and (3) the plaintiff suffered damage as a proximate result of the breach." *Quarles v. Columbia Sussex Corp.*, 997 F. Supp. 327, 330 (E.D.N.Y. 1998) (quoting *Solomon v. City of N.Y.*, 66 N.Y.2d 1026, 1027 (N.Y. 1985)). The duty of care to maintain safe premises is "predicated upon

---

[1]    Although plaintiff purports to bring claims against the TSA, the FTCA authorizes suits only against the United States. *See Barnes v. United States*, 2004 U.S. Dist. LEXIS 7071, at *4 (E.D.N.Y. Apr. 12, 2004). The TSA is therefore dismissed from this suit.

occupancy, ownership, control, or a special use of the premises . . . . Where none is present, a party cannot be held liable for injury caused by a defective or dangerous condition." *Clifford v. Woodlawn Volunteer Fire Co.*, 31 A.D.3d 1102, 1103 (4th Dep't 2006). If plaintiff establishes a duty owed, she can show that defendant breached its duty by proving that defendant "created the dangerous condition" or had "actual or constructive notice of the condition," *Taylor v. United States*, 121 F.3d 86, 89–90 (2d Cir. 1997), and that defendant failed to remedy the condition in a "reasonable time." *Drago v. DeLuccio*, 79 A.D.3d 966, 967 (2d Dep't 2010).

## Findings of Fact and Conclusions of Law

A trial on liability only was held September 19 and September 20, 2011. Four witnesses testified: Ms. Groce, Goel Ramsaroop, a security guard who witnessed plaintiff's fall, Michael Garcia, Facility Manager for JFK/IAT, and Tony Cubilette, a TSA transportation security manager. Based on the preponderance of the evidence, as well as the parties' post-trial memoranda, the following are my findings of fact and conclusions of law, pursuant to Rule 52(a) of the Federal Rules of Civil Procedure.

### *Stipulated Facts*

Prior to trial, the parties stipulated to certain facts. They are as follows:

The United States Transportation Security Administration is an administration of the Department of Transportation, an agency of the United States of America.

Defendant Port Authority of New York and New Jersey owns JFK International Airport, including Terminal 4 of JFK International Airport, the location of the alleged incident.

Defendant JFK International Airport Terminal, LLC, is the lessee and operator of Terminal 4 of JFK International Airport.

2

Defendant Aramark performs cleaning services and janitorial services at Terminal 4 of JFK International Airport pursuant to a written agreement with JFK International Airport Terminal, LLC.

Plaintiff submitted a Notice of Claim (SF-95) to the United States Transportation Security Administration in connection with the claims asserted in this lawsuit. Prior to the institution of this action, more than six months had passed since the claim was filed with the United States Transportation Security Administration on March 12, 2007, and less than six years have passed since the alleged incident occurred on December 17, 2006.

Plaintiff settled and released her claims against the Port Authority of New York and New Jersey, JFK International Air Terminal, LLC and Aramark Management services for the sum of One Hundred and Sixty-Five Thousand Dollars ($165,000).

### *Findings of Fact*

On December 17, 2006, at approximately 11:15 a.m., plaintiff, a Northwest Airlines ("Northwest") customer service agent, on duty, was walking toward Checkpoint A in Concourse A of Terminal Four at JFK/IAT. As a part of her daily duties, plaintiff had to walk from the Northwest ticket counter, where she helped passengers check in, to the Northwest departure gates, where she assisted passengers boarding Northwest flights. Her route from the ticket counter to the departure gates required plaintiff to walk through a cordoned-off serpentine line, at the end of which was a glass partition where the TSA checkpoint began. At the checkpoint, passengers and employees would present their identification. Also, passengers would be subject to x-ray inspection of any carry-on luggage, and both passengers and employees had to pass through a metal detector. The area past the TSA checkpoint is referred to as the "sterile area."

3

Plaintiff, who testified credibly, recounted that, on the day in question, she was wearing her Northwest uniform, which consisted of a knee-length dress and "chunky" heels. As plaintiff approached the serpentine line, while approximately 12 to 15 feet away, she neared a card table, at which a TSA employee was present, and which JFK/IAT and TSA employees termed the Liquids, Gels, and Aerosols ("LGA") table. The purpose of this table was to inform passengers that, in light of recently enacted TSA regulations, they would be allowed to take liquid containers past the checkpoint and into the sterile area only if the liquid were less than 3.4 ounces, the container was placed in a quart-sized, sealed, transparent bag, and each passenger had only such bag. This rule was known as the 3-1-1 rule. In addition to the TSA agent present at the table, the LGA table and surrounding area also had signs informing passengers of the 3-1-1 rule.

Approximately 2 to 4 feet away from the LGA table there was a trash pail that had a significant puddle of clear liquid near its base. The liquid had become dispersed by people rolling their luggage or walking through the puddle. Ms. Groce slipped and fell on the liquid, injuring her left wrist, knee, and shoulder, and causing her clothes to become wet. Several people witnessed plaintiff's fall, including Mr. Ramsaroop, who was working as a security guard at the front of the serpentine line. The (unidentified) TSA agent at the LGA table, who was not looking in Ms. Groce's direction, did not witness the fall.

Although Mr. Ramsaroop testified that he observed the puddle on the floor only a "few minutes" prior to plaintiff's accident, he had at least enough time to call out to warn several passengers as they approached the puddle, navigate the serpentine line in order to notify a TSA agent behind the glass wall, and then return to his post. Mr. Ramsaroop notified the TSA agent, not because he believed it was the TSA's responsibility to maintain the area, but rather because

4

the TSA had access to a telephone that could be used to call JFK/IAT's maintenance hotline—a number all JFK/IAT employees had. Mr. Ramsaroop did not have the opportunity to warn plaintiff prior to seeing her fall.

JFK/IAT and Aramark, which contracted with JFK/IAT to perform janitorial services, had responsibility for maintaining the trash pails and mopping the floor in the area where Ms. Groce fell. JFK/IAT and/or Aramark also had responsibility for the number and placement of pails in the area. Although there was testimony that the trash pail near the LGA table was used for the convenience of passengers wishing to dispose of liquids that did not comply with TSA regulations, the TSA had no authority to dictate the use of JFK/IAT trash pails for that purpose. Moreover, the TSA had no authority to require passengers to dispose of their prohibited liquids, and TSA employees present at the LGA table were not authorized to prevent passengers carrying prohibited liquids from entering the serpentine line. Passengers could, and did, carry prohibited liquids through the serpentine line and then deposit them in pails at the checkpoint. Indeed, even if a passenger attempted to take prohibited liquids into the sterile area, TSA agents were not authorized to stop them. Rather, they were required to contact the Port Authority police, who would then intercept the offending passenger. Plaintiff argues that the LGA table itself was a TSA checkpoint. However, the facts, including plaintiff's own testimony, do not support this assertion. The checkpoint, which the TSA admittedly occupied and controlled, was behind the glass partition, up to 65 feet from where plaintiff fell.

### Conclusions of Law

As an initial matter, I note that much of the testimony at trial was spent attempting to establish the source of the liquid on which Ms. Groce slipped. There was evidence that the liquid, if disposed of by a passenger, may have been disposed of for reasons other than the 3-1-1

5

rule, and that non-passengers, such as friends and family, also may have disposed of liquids in the pail. The third floor, where plaintiff fell, was the "retail floor," and there were restaurants and other places to buy beverages in the area in which the LGA table was set up. On the other hand, Mr. Cubilette, only reluctantly, admitted the obvious, which is that, upon learning of the 3-1-1 rule, many passengers did choose to discard any prohibited liquid they were carrying. But the source of the liquid is irrelevant. Under a control theory of duty—the theory plaintiff relied upon throughout the trial—if there was a dangerous condition in an area under the TSA's control, and of which it had notice, it had a responsibility to remedy the condition in a reasonable time, regardless of the source of the condition.

Under New York law, there is no bright-line test for determining whether a defendant in the circumstances here had control over the area in which it was present. There are, however, two often-used tests that inform the inquiry in this case. First, a defendant can be found to control an area if it has the power to admit or exclude others. *See Miller v. Morse*, 9 A.D.2d 188, 192 (4th Dep't 1959). Second, a defendant controls an area if it has the responsibility for maintenance of the area. *Silverberg v. Palmerino*, 61 A.D.3d 1032, 1034 (3d Dep't 2009). Here, plaintiff has established neither as to the TSA.

As found above, TSA employees present at the LGA table had no power to admit or exclude passengers from the serpentine line, even if a passenger were carrying a prohibited liquid.[2] Likewise, TSA employees present at the LGA table bore no responsibility for maintenance of the area. JFK/IAT, and its independent contractor, Aramark, were solely

---

[2]     In support of her assertion that TSA agents stationed at the LGA table required passengers to dispose of prohibited liquids, plaintiff, in her post-trial memorandum, presents the deposition testimony of Talat Ayub, a security guard for Summit Security, a company that provided security services for JFK/IAT. However, because Mr. Ayub's deposition testimony was not admitted into evidence at trial, it will not be considered.

responsible for the placement and cleaning of the trash pails and the cleaning of the area. There was no evidence that it was the TSA's responsibility, duty, custom, or practice to inspect the area surrounding the LGA table, or the pail which was several feet away, for purposes of detecting hazardous conditions. *See Gluck v. Pinkerton*, 96 A.D.2d 548 (2d Dep't 1983) (granting summary judgment, on a negligence claim, in favor of a security company, where there was no evidence that the security company had the duty to "inspect or examine" a parking lot for hazardous conditions). Therefore, plaintiff has failed to prove that the TSA controlled the area in which Aramark and JFK/IAT determined to place the trash pail and where the puddle was located.

Finally, I also reject plaintiff's arguments regarding occupation and special use, made for the first time in closing arguments. With regard to occupancy, plaintiff's counsel, in both his closing statement and post-trial memorandum, conflates physical occupancy with legal occupancy. Legal occupancy—the type of occupancy that gives rise to a legal duty—arises most often in the context of lessees who do not own the property that they occupy, but nevertheless exercise control of it. Despite a lack of legal ownership, the law imposes a duty on such lessees because of their responsibility for maintaining the premises in safe condition. *See Ramos v. 600 West 183rd Street*, 155 A.D.2d 333, 635 (1st Dep't 1989) (holding that liability for dangerous and defective conditions generally "depend[s] on occupation and control," and that, as a result, it is the tenant, not the landlord, who is generally held responsible for injuries caused by the condition or use of leased premises). Here, although the TSA may have physically occupied the LGA table, for the reasons stated above regarding TSA's lack of control over the area, TSA did not have legal occupancy of the area where the accident occurred.

7

Likewise, plaintiff's argument regarding special use is unpersuasive. The special use exception to the requirement of ownership, occupancy, or control is a "narrow exception." *Minott v. City of N.Y.*, 230 A.D.2d 719, 720 (2d Dep't 1996). The special use exception imposes an obligation on an abutting landowner "where he puts part of a public way to a special use for his own benefit and the part used is subject to his control, to maintain the part so used in a reasonably safe condition . . . ." *Breland v. Bayridge Air Rights*, 65 A.D.3d 559, 560 (2d Dep't 2009). Special use cases generally involve the installation of an object on a public area for the benefit of a private owner. *Id.* Here, even assuming that plaintiff could satisfy the other requirements of special use (*i.e.*, that the TSA is an "abutting landowner" and that the area in front of the serpentine line constitutes a "public way"), she has nevertheless failed to establish that the TSA had exclusive access to, or the ability to exercise control over, the mechanism that plaintiff alleges caused her fall (*i.e.*, the leaking pail). Nor has plaintiff established that the pail was "installed" for the exclusive benefit of the TSA. Defendant's liability cannot therefore be predicated on a special use of the area in which plaintiff fell. *See id.* (holding that the defendant established its right to judgment as a matter of law because it "did not have exclusive access to, or the ability to exercise control over, the grate on which the plaintiff allegedly tripped and fell"); *Ruffino v. N.Y.C. Transit Authority*, 55 A.D.3d 819, 820 (2d Dep't 2008) (affirming summary judgment in favor of the defendant where the plaintiff failed to show that the transit authority derived a special benefit from a public sidewalk that connected a subway stop to Shea Stadium).

Therefore, although the TSA had both actual notice of the dangerous condition via Mr. Ramsaroop's notification, and constructive notice given the amount of time the liquid was on the ground in close proximity to the LGA table, and although the liquid was clearly the proximate cause of plaintiff's foreseeable injury, I find that plaintiff has failed to prove by a preponderance

of the evidence that defendant owed her a duty. Defendant is therefore not liable for plaintiff's injuries.

The Clerk of Court is hereby directed to enter judgment for defendants.

**SO ORDERED.**

s/NG

**NINA GERSHON**
**United States District Judge**

Dated: October 18, 2011
        Brooklyn, New York